## 35644. LITTLES v. BALKCOM.

PER CURIAM.

Defendant Charles A. Littles is serving a life sentence for the murder of Mary Virginia Reid.

According to the evidence submitted at trial, the victim was shot in the head on August 12, 1974. She died four months later from pulmonary embolus, after identifying Littles as her assailant to two witnesses at the scene and testifying at his committal hearing on the charge of aggravated assault. Littles' conviction for murder was affirmed in *Littles v. State,* 236 Ga. 651 (224 SE2d 918) (1976). In April, 1979, he filed a petition for a writ of habeas corpus, which was denied. We granted his application to appeal the denial of his petition for habeas corpus.[1]

1. Littles contends that the trial court record contained no evidence as to the victim's cause of death upon which a rational jury could conclude beyond a reasonable doubt that the defendant was guilty of murder as required under Jackson v. Virginia, — U. S. — (99 SC 2781, 61 LE2d 560) (1979). Georgia law requires claims as to the sufficiency of evidence to be raised on direct appeal; such a claim may not be raised in a state habeas corpus proceeding. *Head v. Hopper,* 241 Ga. 164, 165 (243 SE2d 877) (1978); *Allen v. Hopper,* 234 Ga. 642 (2) (217 SE2d 156) (1975); *Coleman v. Caldwell,* 229 Ga. 656 (2) (193 SE2d 820) (1972).

2. Two witnesses who talked with the victim at the scene of the shooting a few minutes after she was shot testified that the victim identified the defendant as her

---

[1] On direct appeal, *Littles v. State,* supra, we considered, among other enumerations, the sufficiency of the evidence, whether the testimony of the two witnesses who spoke with the victim at the scene was admissible as part of the res gestae, and the admissibility of the testimony of the sheriff who heard the victim's testimony at the committal hearing. These same three subjects, this time presented as constitutional questions, are before us again on habeas corpus.

assailant.[2] Defendant contends that the admission of this testimony denied him his constitutional right of confrontation.

The constitutional right to confrontation does not require that all hearsay evidence be excluded from evidence in criminal cases. Pointer v. Texas, 380 U. S. 400, 407 (85 SC 1065, 13 LE2d 923) (1965); Dutton v. Evans, 400 U. S. 74, 80 (91 SC 210, 27 LE2d 213) (1970). A witness testifying at trial subject to cross examination can testify as to what he has heard without violating the confrontation clause. See opinion of Stewart, J., in Dutton v. Evans, supra, 400 U. S. at 88, and opinion of Harlan, J., 400 U. S. at 94.

The victim's statement was properly admitted as part of the res gestae, *Littles v. State,* supra, and the admission of such evidence did not violate defendant's right of confrontation. See Code Ann. § 38-305; *Callahan v. State,* 229 Ga. 737 (194 SE2d 431) (1972).

3. The sheriff testified over objection as to the testimony which the victim gave at the defendant's commitment hearing two and a half months after the shooting.[3] Defendant contends that the admission of the sheriff's testimony at trial recounting the victim's preliminary hearing testimony denied him his constitutional right of confrontation. The defendant was represented by counsel at that hearing and the victim was subjected to cross examination. However, no transcript of the testimony given at that hearing was made.

---

[2] The defendant lived in the house next to and below that of the victim. Witness Miller, who drove the victim to the hospital, testified that as he was putting the victim in his car she told him that that fellow right down there shot her. When asked who she was talking about, the victim said to Miller: "Charles Littles."

Witness Wind apparently was one of the first people to find the victim. When he asked her what happened, she said "kind of foggy," "that man done shot me." Wind asked "What man?" and she said "Charles."

[3] The sheriff testified as to the victim's testimony as follows: ". . . in the morning approximately, around 6:00

Admission of an oral summary of the victim's testimony given at defendant's preliminary hearing was not error. The victim's "statement at the preliminary hearing had already been given under circumstances closely approximating those that surround the typical trial." California v. Green, 399 U. S. 149, 165 (90 SC 1930, 26 LE2d 489) (1970).

The absence of a hearing transcript was just one non-controlling factor in considering the weight to be given the sheriff's testimony. Code § 38-314 provides: "The testimony of a witness, since deceased, or disqualified, or inaccessible for any cause, given under oath on a former trial, upon substantially the same issue and between substantially the same parties, may be proved by anyone who heard it, and who professes to remember the substance of the entire testimony as to the particular matter about which he testifies." The defendant testified in his own defense in this case. He, or his attorney, or the commitment hearing magistrate could have testified as to any discrepancy they observed between the victim's testimony and the sheriff's recollection of it.

The sheriff's recounting of the victim's preliminary hearing testimony which had been given subject to cross examination by the defendant's attorney did not violate the defendant's right of confrontation. California v.

---

o'clock, she heard somebody at her door and her window. A window at first, she said at the window, and then she heard the door open and heard somebody started in, and she met him at the door to her bedroom . . . And she recognized him and called him Charles, said, 'Charles, what are you doing here?' And he made some unusual noise and said she pushed him, he was in the door and she pushed him back against her refrigerator, and tried to, attempted to run out and said when she did, well, he shot her with a pistol in the head and she ran on out in the yard and fell and went screaming for help. 'Somebody, please help me!' 'Please help me!' And said he came back out of his house with something around his head and he said, 'I'll help you, and he shot me twice and was bang, bang!' And he left and left her laying there on the ground."

Green, supra; *Prater v. State,* 148 Ga. App. 831 (5B) (253 SE2d 223) (1979).

*Judgment affirmed. All the Justices concur, except Hill, J., who dissents.*

ARGUED JANUARY 14, 1980 — DECIDED FEBRUARY 20, 1980.

*Rogers & Hardin, Richard H. Sinkfield, Phillip S. McKinney,* for appellant.

*Arthur K. Bolton, Attorney General, Mary Beth Westmoreland, Assistant Attorney General,* for appellee.

HILL, Justice, dissenting.

I dissent only from Division 1 of the majority opinion.

The majority rely on the rule that our law requires claims as to the sufficiency of the evidence to be raised on direct appeal, not on habeas corpus. They cite three cases for that proposition. Those three cases were decided when the "any evidence" rule was in effect prior to Jackson v. Virginia, — U. S. — (99 SC 2781, 61 LE2d 560) (1979). In Jackson, the Supreme Court held that a federal habeas corpus court must consider not whether there was "any evidence" to support a state court conviction but whether there was sufficient evidence to justify a rational trier of facts to find the essential elements of the crime beyond a reasonable doubt.

Although the precise holding of Jackson fixed a constitutional standard of review in federal habeas corpus cases, the finding in that decision that due process requires that no person shall be made to suffer the onus of a criminal conviction except upon "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense," resulted in this court adopting that standard of review on direct appeal. *Stinson v. State,* 244 Ga. 219 (4) (259 SE2d 471) (1979); *Driggers v. State,* 244 Ga. 160, 161 (259 SE2d 133) (1979); *Boyd v. State,* 244 Ga. 130 (5) (259 SE2d 71) (1979); *Jackson v. State,* 244 Ga. 276 (1) (1979).

Jackson v. Virginia, supra, elevated claims of insufficiency of the evidence to constitutional status.

Our Habeas Corpus Act, Code Ann. § 50-127 (1) (Ga. L. 1967, pp. 835, 836, as amended) provides that "Any person imprisoned by virtue of a sentence imposed by a State court of record who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of the State of Georgia or the laws of the State of Georgia may institute a proceeding under this section."

In the case before us Littles asserts that there was a substantial denial of his rights under the U. S. Constitution because he was convicted of murder on evidence which does not satisfy the Jackson v. Virginia standard. Relying on pre-Jackson cases, the majority say that sufficiency claims cannot be raised on habeas corpus. The majority do not explain why Littles can raise two confrontation claims on habeas corpus yet cannot assert a due process-sufficiency claim; i.e., cannot assert a denial of his due process rights under the Constitution of the United States as prescribed by our statute. Although it could precipitate a shower of habeas corpus cases, I would apply our habeas corpus statute and consider Littles' sufficiency claim on its merits.

Examining the merits of this claim, it will be found that the victim was shot on August 12, 1974; that she was given emergency treatment at the Greene County hospital before being transferred to the Medical College of Georgia hospital in Augusta; that after she was sent home she was seen as an out-patient on several occasions; that at this time it was expected that she would live; that she was hospitalized in November for psychosis (nervous disorder, mental confusion, etc.); that she was hospitalized again from December 15 through 23rd for bronchopneumonia and congestive heart failure; that she was released on December 23rd and returned on the 24th of December at which time attempts to revive her failed. No autopsy was performed. She was 37.

The victim's doctor testified that in his opinion based on examination of the body without an autopsy the cause of her death was pulmonary embolus, or blood clot traveling to the lung. When asked whether the August gunshot injury and its attendant disability caused or was a factor in her death, the doctor testified that he did not

know. He testified that pulmonary embolus could be caused by surgery or just by inactivity. He stated that pulmonary embolus could have over a hundred causes and was consistent with the injury she received because she became inactive due to the gunshot wound which left her physically paralyzed on one side. He stated further that she developed psychosis from no known cause and that her general disposition led to a lot of inactivity and that she would not continue her physical therapy. He testified that her psychosis was consistent with her brain injuries. When asked on cross examination if he could say without doubt that the gunshot injuries caused the victim's death, the doctor said no.

The death certificate prepared by the doctor whose testimony is summarized above showed that the cause of death was pulmonary embolus due to bronchopneumonia due to congestive heart failure. The death certificate listed the gunshot wound under "significant conditions contributing to death but not related to the terminal disease condition given . . ." above.

When this case was here on direct appeal, *Littles v. State,* supra, at a time when the any evidence standard was in effect, we found that (236 Ga. at 654): "While the evidence was not overwhelming on the issue of whether Mrs. Reid's death was caused by the gunshot wounds, there was sufficient evidence to authorize the jury to conclude that the wounds were the cause of the pulmonary embolus from which she died."

Now, in my view, the proper standard of review has changed, and after viewing the evidence in the light most favorable to the prosecution, I cannot find that a rational trier of fact could have found beyond a reasonable doubt that the defendant's shooting of the victim in August caused her death in December. It could have caused her death, but that leaves room for reasonable doubt. Using the higher standard of review I would grant habeas corpus relief.

I would add only that the jury was not charged as to aggravated assault (this case was tried before *Stonaker v. State,* 236 Ga. 1 (222 SE2d 354) (1976)), and thus the verdict of guilty of murder does not show that the jury found the defendant guilty of murder as opposed to being guilty of

aggravated assault. In fact, when the jury wavered, they were instructed to find the defendant guilty of murder or not guilty. For the foregoing reasons, I respectfully dissent.